JUSTICE GRAY,
dissenting.
¶20 I dissent from the Court’s opinion which appears to be based on a determination that Schipman’s negligent conduct in failing to take any action to warn motorists of the dead horse in the road did not cause Dorvall’s death as a matter of law. It is my view that the causation question in this case was a question of fact for the jury which was *279 properly submitted to the jury and, applying the correct standard of review, we are obligated to affirm Schipman’s conviction for negligent homicide.
¶21 Our standard in reviewing a jury verdict is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Medrano (1997), 285 Mont. 69, 73, 945 P.2d 937, 939. In conducting such a review, we must keep in mind that witness credibility and the weight to be given testimony are to be determined by the trier of fact. See State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. Without explanation, the Court does not cite or apply these standards. Moreover, it does not view the evidence in the light most favorable to the prosecution. Indeed, the Court relies almost totally on Schipman’s version of the events and accepts his testimony at face value without any regard to the State’s evidence and particularly without regard to inconsistencies and weaknesses in Schipman’s version, such as the fact that he did not tell law enforcement officials until much later that he had looked back and seen nothing after hitting the horse. Nor does the Court discuss the conflicting evidence that Schipman hit the horse head-on, resulting in the horse immediately falling to the ground in the southbound lane and staying there to ultimately be hit by the vehicle Keller was driving.
¶22 Finally, the Court does not present clearly either the State’s theory of the case or Schipman’s somewhat conflicting defense theories. The State’s theory was that the horse was in the road, not lunging toward it, when Schipman hit it broadside and left it lying in the southbound lane. Moreover, while the State agreed that Weakley and Mallon’s actions in parking in the northbound lane and attempting to warn oncoming motorists about the horse in the southbound lane were not unreasonable, the State’s evidence pointed to other actions Schipman could have taken which would have prevented the accident. For example, had Schipman actually checked on the horse’s whereabouts and seen that it was in the southbound lane, he could have remained at the scene and parked his vehicle with his headlights shining on the dead horse as a clear warning to other motorists on that dark night that the road was obstructed. Similarly, he could have placed his vehicle — much more visible than a dark, dead horse — in the southbound lane marking the spot so that oncoming southbound vehicles would have had to go around it. In addition, the *280 record reflects that about 10 minutes elapsed between Schipman hitting the horse and the fatal accident. According to the timing-related evidence, Schipman could have driven to his home after hitting the horse in approximately 30 seconds, as he did, and called 911 instead of engaging friends in conversation for an extended period of time; had he done so, the evidence reflects that law enforcement officers could have responded to the dead horse in the roadway in 3 minutes and properly “secured” the area to warn oncoming motorists by placing flares and turning on the patrol car’s revolving top lights.
¶23 The Court’s failure to discuss Schipman’s alternative defense theories, which likely undermined his credibility in the jury’s eyes, also reflects the extent to which the Court has merely accepted Schipman’s evidence and argument that cause in fact was not established as a matter of law. Schipman’s primary theory — as related by the Court — was that he hit the horse as it was lunging near to, but not on, the roadway, looked back, saw nothing, assumed the horse was in the borrow pit and proceeded home. Under this theory, the horse subsequently returned to the roadway and died prior to the time Weakley arrived to find it in the southbound lane, and nothing Schipman could have done would have changed the result. This theory incorporated two of Schipman’s defenses: that Weakley and Mallon’s actions mitigated any culpability he might have had and that the Keller vehicle should have seen the dead horse in the road and stopped in time. Schipman’s version of the accident itself, however, was challenged on cross-examination and through substantial evidence presented by the State. Furthermore, as pointed out above, the record reflects other ways in which Schipman could have given warning to prevent the fatal accident. Schipman also presented an “alibi” defense of sorts. Under this somewhat undeveloped theory, he apparently either hit a different horse or hit the horse at issue earlier, leaving it alive, and was already home by the time Weakley first saw the horse running loose on the highway.
¶24 The State charged Schipman with negligent homicide in that he negligently caused Dorvall’s death. See § 45-5-104, MCA (1995). The allegedly negligent conduct at issue was Schipman’s decision to leave the scene and do nothing to warn other motorists of the risk the horse posed after he hit it. Although it is somewhat difficult to tell from its opinion, the Court appears to assume arguendo that Schipman’s conduct was, in fact, criminally negligent in that Schipman consciously disregarded the risk that a death would result from his leaving a dead *281 horse on the road without taking any steps to warn other motorists. See § 45-2-101(42), MCA (1995). Thus, under the Court’s reasoning, only the causation element remained to be established.
¶25 In a negligent homicide case, the State must prove that the accused’s conduct is the “cause-in-fact” of the victim’s death. See State ex rel. Kuntz v. Thirteenth Judicial Dist. Court, 2000 MT 22, ¶¶ 36-37, [298 Mont. 146, ¶¶36-37], 995 P.2d 951, ¶¶ 36-37. “A party’s conduct is a cause-in-fact of an event if ‘the event would not have occurred but for that conduct; conversely, the defendant’s conduct is not a cause of the event, if the event would have occurred without it.’ ” Kuntz, ¶ 37 (citations omitted). Combining that definition with our standard of review of a jury verdict, the question before us, properly stated, is this: Whether, viewed in the light most favorable to the prosecution, there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that, but for Schipman leaving the scene of the horse accident and failing to take any action to warn of the risk he had created, Dorvall would not have died. Viewing the evidence of record in the light most favorable to the prosecution, I would conclude there was sufficient evidence for a jury to find causation in this case. I simply cannot agree with the Court’s implicit determination that the fatal accident was unavoidable as a matter of law once Schipman hit the horse.
¶26 In closing, it is appropriate to observe that this was not a particularly strong case for the prosecution. Had the case against Schipman been either stronger or weaker, a plea agreement might have been reached. That did not occur, however, and the case proceeded to a jury. In my view, this is the kind of close case in which a decision by the jury was entirely appropriate. While the jury might well have acquitted Schipman of negligent homicide on the evidence before it, and while some might think that was a more appropriate outcome, I submit the jury was well within its province in convicting Schipman. In my view, it is unwise for this Court to start down the road of deciding close factual questions in criminal cases as a matter of law, especially when it accomplishes such a resolution by merely accepting the defendant’s version of the facts and arguments. I dissent.
CHIEF JUSTICE TURNAGE joins in the foregoing and following dissenting opinions of JUSTICE GRAY and JUSTICE LEAPHART.